UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————————

WAYNE THAMES,

                    Plaintiff,                                    Case No.  1:15-CV-0413

v.
                                                                          HON. RAY KENT

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant,

————————————————————/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of the Social Security Administration

(Commissioner).  Plaintiff Wayne Thames seeks review of the Commissioner's decision denying his

claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles

II and XVI of the Social Security Act.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining

whether the Commissioner applied the proper legal standards in making her decision and whether

there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of*

*Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo*

review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-four years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.32, 85.)  He completed the seventh grade, and was previously employed as an over-the-road truck driver.  (PageID.76, 256.)  Plaintiff applied for benefits on April 2, 2012, alleging that he had been disabled since March 4, 2011 due to epilepsy, a broken foot and anxiety. (PageID.85, 100, 190–202.)  Plaintiff's applications were denied on June 8, 2012, after which time he requested a hearing before an ALJ. (PageID.114–132, 135–136.)  On October 24, 2013, Plaintiff

2

appeared with his counsel before ALJ Stanley K. Chin for an administrative hearing with testimony

offered by Plaintiff and a vocational expert (VE).  (PageID.52–81.)  In a written decision dated

November 27, 2013, the ALJ determined that Plaintiff was not disabled.  (PageID.35–51.)  On

February 25, 2015, the Appeals Council declined to review the ALJ's decision, making it the

Commissioner's final decision in the matter.  (PageID.19–23.)  Plaintiff subsequently initiated this

action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

If the Commissioner can make a dispositive finding at any point in the review, no further finding is

required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant

suffers from a nonexertional impairment as well as an exertional impairment, both are considered

3

in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Chin determined Plaintiff's claim failed at the fifth step of the evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  (PageID.37.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) a seizure disorder; (2) disorders of his left foot; (3) an anxiety-related disorder; and (4) a substance abuse disorder.  (PageID.37.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.37–39.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is limited to lifting up to twenty pounds occasionally and ten pounds frequently; standing and walking for at least 2 hours; and sitting for up to 6 hours in an eight-hour workday with normal breaks.  The claimant must have the option to alternate between sitting and standing positions at will.  The claimant cannot climb ladders, ropes, or scaffolds.  The claimant needs to avoid all use of moving machinery and exposure to unprotected heights.  His work is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

(PageID.39–40.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform his past relevant work.  (PageID.45.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE identified the following jobs as representative of work that Plaintiff could perform:  surveillance system monitor (2,650 Michigan jobs and 74,470 national jobs) and charge account clerk (4,980 Michigan jobs and 200,150 national jobs).  (PageID.77–79.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.46.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his alleged onset date through the date of the decision.  (PageID.46–47.)

## DISCUSSION

**1.    The ALJ's Step Three Determination Is Supported By Substantial Evidence.**

Plaintiff contends that the ALJ erred in finding that he was not disabled under Listing 11.03 (nonconvulsive epilepsy).  (PageID.570–572.)  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular

impairment.  20 C.F.R. §§ 404.1525(d); 416.925(d).  A claimant does not satisfy a particular listing unless all of the requirements of the listing are present.  *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *see, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.").  If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).  The requirements of Listing 11.03 are as follows:

> Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.  To meet the requirements of Listing 11.03, a claimant must also satisfy the introductory paragraph found at section 11.00(A):

> Under [Listings] 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy.  Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed mediation is being taken.  When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of serum drug levels.  Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug.

6

> Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood level. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00A. After setting forth the Listing's requirements and discussing relevant social security rulings, the ALJ found Plaintiff did not meet the requirements of Listing 11.03:

> In this instance, there are at least three total occasions–two after the claimant's alleged onset date–that indicate that the claimant's medication levels in his blood were sub-therapeutic. The claimant testified that his medication dosages were subsequently increased. Furthermore, as discussed herein, the evidence shows that the claimant has an alcohol abuse disorder, and on more than one occasion, the claimant indicated that his seizure occurrences were associated with his alcohol consumption. For these reasons, I find that the claimant's seizure disorder does not meet the requirements of this listing.

(PageID.38) (internal citations omitted).

Plaintiff raises a number of claims regarding the ALJ's analysis. First, Plaintiff correctly notes that while the ALJ claimed to evaluate Plaintiff under Listing 11.03, the requirements the ALJ listed were those of Listing 11.02. (PageID.38, 570.) The Court finds this error to be harmless. As the Commissioner notes, the reasons provided by the ALJ relate to the requirements listed in section 11.00A, which on their face apply to both Listings 11.02 and 11.03. Thus the ALJ's

incorrect recitation of the Listing's requirements had no bearing on his valid reasons for finding Plaintiff was not disabled at step three.

Plaintiff secondly argues that "there is no evidence [that] noncompliance or alcohol" were the reason for the sub-therapeutic medication levels." (PageID.571.) Plaintiff provides a statement from his neurologist stating that "[t]he patient was advised that if he is continuing to have spells on Dilantin at 600 mg a day and he denies missing doses, if he has a reasonably high Dilantin level and continues to have spells, we may need to change his antiepileptic medication." (PageID.443.) Relevant Social Security rulings demonstrate the ALJ did not err:

> The predominant reason for low anticonvulsant blood levels is that the individual is not taking the drugs as prescribed. In extremely rare cases, individual idiosyncrasy in absorption or metabolism of the drug causes therapeutically inadequate anticonvulsant blood levels. The reasons for abnormal absorption or metabolism of these drugs is linked to the individual's clinical condition and would have to be recognized by the treating physician in his or her efforts to obtain control of the seizures. Therefore, a finding that low anticonvulsant blood levels are caused by idiosyncrasy in absorption or metabolism must be based on specific descriptive evidence provided by the treating physician.

> When reported blood drug levels are low, therefore, the information obtained from the treating physician should include an explanation as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Unless convincing evidence is provided that subtherapeutic blood drug levels are due to abnormal absorption or metabolism, and the prescribed drug dosage is not itself [inadequate], the conclusion should follow that the individual is not complying with the treatment regimen.

SSR 87–6, 1987 WL 109184, at *3 (S.S.A. 1987).[1]  The ALJ cited three instances in which Plaintiff's medication levels were sub-therapeutic.  (PageID.38, 318, 429, 502.)  Plaintiff's citation to the speculative report from his neurologist does not suffice to demonstrate "specific descriptive evidence" amounting to "convincing evidence . . that [the] subtherapeutic blood drug levels" were due to any idiosyncrasies.  Id.  Instead the neurologist's note appears to accept on face value that Plaintiff was taking his medication as prescribed. The note does not explain why Plaintiff's medication levels were low.  It makes no connection between Plaintiff's medication levels and any idiosyncrasies on the part of Plaintiff.  Accordingly, the ALJ did not err in finding that Plaintiff's medication levels indicated a lack of compliance.

Plaintiff continues to assert that he took his medications as prescribed, but argues that it was in error for the ALJ to find Plaintiff was not complying with his prescribed therapy without first considering his inability to afford his medication.  (PageID.575–577.) SSR 96–7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  This includes the individual's inability to afford treatment.  SSR 96–7p, 1996 WL 374186, at *7–8 (S.S.A. July 2, 1996).[2]  Consistent with this requirement, the ALJ asked the Plaintiff at the hearing whether he

---

[1] Social Security Rulings (SSRs) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006).

[2] Both Plaintiff and the Commissioner also rely on language from SSR 82-59. (PageID.575, 584.) SSR 82-59 does not appear to be applicable here.  The ruling articulates a framework an ALJ must follow when assessing whether a claimant has failed to follow prescribed treatment. *See, e.g., Carr v. Colvin*, 2013 WL 1309094 at *22-23 (M.D. Tenn.,

had "any problems getting your medication or affording your medication." (PageID.75.) While Plaintiff responded he did have problems, he also noted that he obtained assistance both through his family – specifically his brother – as well as through the state. (PageID.75.) This, along with the fact that Plaintiff was taking medication, albeit at sub-therapeutic levels at times, demonstrates Plaintiff's ability to obtain medication. The ALJ noted he considered all symptoms according to the requirements of, among other things, SSR 96–7p. (PageID.40.) The Court finds no compelling reason to disturb the ALJ's determination. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Finally, substantial evidence supports the ALJ's determination that Plaintiff's alcohol use played a part in his seizures. Numerous records document Plaintiff's reported seizures coinciding with alcohol abuse. (PageID.285, 300, 331, 339, 408, 501, 523, 525, 529, 539.) On May 23, 2010, Plaintiff was described as having alcohol withdrawal seizures. (PageID.333.) A May 13, 2013 treatment note found Plaintiff "has had previous seizures associated with alcohol consumption." (PageID.441.) In December 2010, Plaintiff stated that he hoped to gain sobriety "to control his seizure activity." (PageID.508.) Plaintiff argues, however, that the ALJ should not have relied on records predating his alleged onset date. (PageID.572.) But Plaintiff provides no authority stating the ALJ could not consider those records, and such records are certainly relevant in determining Plaintiff's functional limitations as of his alleged onset date especially where, as here, there does not appear to be any significant change in Plaintiff's impairments between the date of those notes and his alleged onset date. Moreover, the records were relevant to the ALJ's finding that when Plaintiff ceased his alcohol use, there were no further witnessed seizures. (PageID.42.)

---

Mar. 12, 2013) (citing Soc. Sec. Rul. 82-59). This framework, however, only applies "if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore [his] ability to work." *Id.* (citation omitted). The ALJ did not find that Plaintiff was disabled, thus Social Security Ruling 82–59 does not apply.

Accordingly, for all the above reasons, the Court finds the ALJ's step three determination to be supported by substantial evidence. Plaintiff's claims of error on this point are denied.

### 2.      The ALJ's RFC Determination is Supported by Substantial Evidence.

Plaintiff next argues that because the ALJ's RFC assessment does not mirror the opinion or findings of any medical expert it is legally deficient. (PageID.572–576.) Plaintiff has identified no authority to support this position. While Plaintiff has cited to two Sixth Circuit decisions, neither supports Plaintiff's argument.

In *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009), the Sixth Circuit held that an ALJ could not reject a treating physician's opinion based solely on the finding that "another physician had reached the opposite conclusion." *Id.* at 266. In *Cole v Astrue*, 661 F.3d 931 (6th Cir. 2011), the Sixth Circuit held that it was a violation of the treating physician rules where an ALJ discounted a treating physician's opinion based upon an inaccurate assessment of the claimant's reported activities. *Id.* at 939. These decisions merely reiterate the settled rule that an ALJ's decision to discount the opinion of a treating physician must be supported by substantial evidence. Neither decision, however, supports Plaintiff's argument that the ALJ's RFC determination must be completely consistent with the opinions or findings of any medical examiner or care provider.

None of the physicians cited by Plaintiff invoke the treating physician rule. None of them saw Plaintiff more than once, and accordingly the ALJ properly classified them as acceptable source examiners or consultants. (PageID.42–43.)   Moreover, the Sixth Circuit has rejected Plaintiff's argument. *See, e.g.*, *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]he Commissioner has final responsibility for determining an individual's RFC . . . and to

11

require the ALJ to base her RFC finding on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (quoting SSR 96–5p). Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  September 8, 2016                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge